David B. Owens, State Bar No. 275030
Jon Loevy, admitted *pro hac vice*
Anand Swaminathan, admitted *pro hac vice*
Steven Art, admitted *pro hac vice*
Alison R. Leff, admitted *pro hac vice*
alison@loevy.com
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, Illinois 60607
(312) 243-5900 (phone)
(312) 243-5902 (fax)

Jan Stiglitz, State Bar No. 103815
Law Office of Jan Stiglitz
14462 Garden Trail
San Diego, CA 92127
(619) 525-1697 (phone)

*Counsel for Plaintiff*

LOEVY & LOEVY
Attorneys at Law

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| HORACE ROBERTS, | Case No. 5:19-cv-01877-JGB-SHK |
|---|---|
| Plaintiff, | **Response in Opposition to Motion for an Order to Quash Subpoena to Produce Documents Pursuant to F.R.C.P. Rule 45** |
| v. | |
| COUNTY OF RIVERSIDE *et al.*, | Hon. Jesus G. Bernal |
| Defendants. | Hon. Shashi H. Kewalramani |
| | **Hearing Date: November 2, 2020**<br>**Hearing Time: 11 a.m.**<br>**Courtroom 3 or 4, Hon. Kewalramani** |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................ii

INTRODUCTION ............................................................................2

BACKGROUND ............................................................................5

    I.    Plaintiff's Claims Relevant to the Current Dispute ....................5

    II.    Relevant Procedural History ........................................7

    III.    Defendants Have Preserved Almost No Record of Their Investigation ....9

    IV.    Plaintiff Seeks Centrally Relevant Documents from the DA ...............10

    V.    Plaintiff's Effort to Narrow the Subpoena and Reach Agreement
        with the Riverside District Attorney ...............................12

ARGUMENT ............................................................................15

    I.    Legal Standard....................................................15

    II.    The Subpoena Seeks Critical, Relevant Information ...............16

    III.    The Subpoena Does Not Impose an Undue Burden...............18

    IV.    The Protective Orders Are Sufficient to Safeguard the Documents,
        As the DA Has Conceded ........................................19

    V.    The DA Has Not Properly Invoked Privilege .........................21

CONCLUSION............................................................................24

LOEVY & LOEVY
Attorneys at Law

**Response in Opposition to Motion for an Order to Quash Subpoena**                    5:19-cv-01877-JGB-SHK
**Pursuant to F.R.C.P. Rule 45**

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ...............20

4  *Chism v. County of San Bernardino,* 159 F.R.D. 531 (C.D. Cal. 1994) .....21, 22, 23

5  *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05CV01411OWW GSA,
6  2009 WL 3381055 (E.D. Cal. Oct. 15, 2009).........................................................19

7  *Hampton v. City of San Diego,* 147 F.R.D. 227 (S.D. Cal. 1993)..........................22

8  *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017 (Fed. Cir. 1986) .........16

9  *In re Third Party Subpoena of Am. Suzuki Motor Corp.*, No.
10  SACV1201571CJCMLGX, 2012 WL 12903125 (C.D. Cal. Oct. 17, 2012)..........16

11  *Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995).......................8

12  *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) ............................22, 23
13

14  *Kerr v. U.S. Dist. Ct. for the Northern Dist.,* 511 F.2d 192 (9th Cir. 1975) ...........21

15  *Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018).................................................11, 17

16  *Miller v. Pancucci,* 141 F.R.D. 292 (C.D. Cal. 1992)............................................22

17  *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552 (C.D. Cal. 2007).....20
18

19  *Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012)....................................12, 17

20  *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995).........................21, 22, 23

21  *Tennison v. City and County of San Francisco*, 570 F.3d 1078
22  (9th Cir. 2009)...................................................................................................11, 17

23

24

25

26

27

28

LOEVY & LOEVY
Attorneys at Law

**Response in Opposition to Motion for an Order to Quash Subpoena**           5:19-cv-01877-JGB-SHK
**Pursuant to F.R.C.P. Rule 45**

# INTRODUCTION

Plaintiff Horace Roberts was wrongly convicted of the 1998 murder of Terry Cheek. He had nothing to do with the crime and no evidence connected him to it. Plaintiff claims in this suit that Defendants suppressed exculpatory evidence that would have allowed Plaintiff to prove his innocence, including evidence implicating the real killers, Googie Harris, Sr., Googie Harris, Jr., and Joaquin Leal. Those three men are currently being prosecuted for Cheek's murder in Riverside County.

To discover critical information relevant to his claims and defenses, Plaintiff sent a subpoena for documents to the Riverside County District Attorney's Office (the "DA"). In consultation with the DA, Plaintiff narrowed his subpoena to the most essential materials and agreed to an attorneys'-eyes-only protective order to safeguard the confidentiality of materials the DA produces, which this Court has now entered. Dkt. 150. While the DA has agreed to produce a portion of the police reports in its possession in response to Plaintiff's narrowed subpoena, it has otherwise refused to comply and has moved to quash. Dkt. 144.

The DA's motion to quash should be denied, and the DA should be ordered to comply with Plaintiff's narrowed subpoena. The DA has sole possession of documents showing what evidence it received from Defendants during their investigation of the Cheek homicide and prosecution of Plaintiff as well as evidence showing that the Harrises and Leal killed Terry Cheek. There is simply no basis in federal law to prevent Plaintiff from discovering this evidence.

First, the documents the DA possesses are centrally relevant to the claims and defenses in this lawsuit. As explained below, plaintiffs in civil wrongful conviction cases alleging that police officer defendants suppressed exculpatory information are required to show that the defendants withheld exculpatory information they learned during their investigation from state prosecutors. As a result, it is essential that

**Response in Opposition to Motion for an Order to Quash Subpoena
Pursuant to F.R.C.P. Rule 45**                    5:19-cv-01877-JGB-SHK

Plaintiff be permitted to compare the record of the police investigation given to his attorneys and produced by the police officer Defendants to the investigative documents and communications in the DA's files. Only by conducting such a comparison will Plaintiff be able to show what information Defendants had in their possession during his criminal prosecution and conviction and what information they turned over to prosecutors. Moreover, Plaintiff's central allegation in this lawsuit is that Defendants provided false information to prosecutors to secure Plaintiff's prosecution and conviction, while obfuscating information that would have shown Plaintiff was not in fact the real killer. The information Defendants gave the DA—*i.e.*, the investigative documents and communications in the DA's file—is a fundamentally necessary category of proof Plaintiff will need to present at trial. Apart from documents in Defendants' possession, it is difficult to articulate a more important repository of documents than those controlled by the DA. For this reason alone, the DA should be compelled to produce the documents in dispute.

Second, and independently important, the jury in this case, as in all wrongful conviction cases, will be asked to decide whether Plaintiff is innocent of Cheek's murder. A plaintiff's innocence is relevant to whether evidence suppressed by a defendant was material to the criminal case, and whether a defendant acted with the requisite indifference in suppressing evidence. Moreover, courts across the country have held that a plaintiff's innocence of a crime for which he was wrongly convicted is relevant to the plaintiff's damages. Plaintiff alleges in this case that Defendants suppressed evidence showing the Harrises and Leal killed Cheek, and instead presented Googie Harris, Sr. as a witness against Plaintiff to secure his conviction. As a result, Plaintiff went to prison for decades for a crime he had not committed, suffering incomprehensible damages. The DA is in possession of evidence showing that, in fact, the Harrises and Leal did kill Cheek, just as Plaintiff alleges. Indeed, the

LOEVY & LOEVY
Attorneys at Law

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**                    5:19-cv-01877-JGB-SHK

DA is currently prosecuting those three individuals for murder. This is resounding evidence of Plaintiff's innocence and Defendants' efforts to frame Plaintiff. For that reason as well the DA should be ordered to produce the disputed documents.

Third, it is particularly important for Plaintiff to have access to the DA's files in this case because Defendants have claimed they have not preserved the documents they created during their investigation of the Cheek murder, and thus currently possess only a limited set of police reports and no communications. Given that Defendants no longer possess documents essential to this case, the DA's documents may be the only records that still exist of Defendants' investigation and their alleged misconduct. Permitting the DA to refuse production of these relevant documents might deprive Plaintiff of essentially all relevant document discovery in the case.

While there are myriad good reasons to compel production of the DA documents, the DA's arguments for avoiding the subpoena lack merit. The DA's claim that the production of these documents will jeopardize the Harrises and Leal's prosecution is belied by the Court's protective orders entered in this case, which provide ample and strict protection of the documents in question. In addition, the DA's argument that it should not be subjected to discovery because it is a third-party to the litigation cannot hold water, given its failure to demonstrate any burden it faces that is significant enough to outweigh Plaintiff's need for the information the subpoena seeks. Moreover, the DA has failed to meet the threshold requirement to invoke privilege and void compliance with the subpoena.

Last but not least, permitting the DA to avoid responding to Plaintiff's subpoena because of its prosecution of the Harrises and Leal would undermine this Court's previous decision declining to stay this civil case while that criminal case proceeds. All the arguments the DA presents for refusing to participate in discovery were first raised by Defendants when they asked this Court to stay this civil case

LOEVY & LOEVY
Attorneys at Law

**Response in Opposition to Motion for an Order to Quash Subpoena**
**Pursuant to F.R.C.P. Rule 45**                                    5:19-cv-01877-JGB-SHK

entirely. Dkt. 50; Dkt. 76. In rejecting those arguments, this Court concluded that the balance of equities weighed strongly in favor of permitting Plaintiff to proceed with discovery in this civil case. Dkt. 83. Indeed, in its opinion denying a stay, this Court observed that concerns about the sensitivity of the prosecutor's file would be adequately addressed by a protective order. Dkt. 83 at 8-9. Both the original protective order and this Court's newly-entered attorneys'-eyes-only protective order between Plaintiff and the DA will ensure that the prosecution of Cheek's real killers is not compromised by the production of the DA's files in this civil suit.

Plaintiff spent decades in prison for a crime he did not commit based on Defendants' misconduct. Since this case was filed, Defendants have done everything in their power to stop it from moving forward. Now discovery has begun, and Defendants claim they have almost no documents from their underlying investigation of the Cheek murder. As a result, the single most important repository of relevant documents is in the DA's possession. The DA now takes the position that Plaintiff should be deprived of that critical evidence because the real perpetrators are being prosecuted. Justice for Plaintiff has been long denied. He should not be deprived of his ability to vindicate his federal constitutional rights because Defendants and state officials have finally decided to prosecute Cheek's actual killers instead of pursuing Plaintiff's wrongful conviction. The DA should be ordered to produce documents responsive to Plaintiff's narrowed subpoena in this case.

## BACKGROUND

## I.    Plaintiff's Claims Relevant to the Current Dispute

In 1999, Plaintiff was wrongfully convicted in the Riverside County Superior Court for the murder of Terry Cheek. Dkt. 149 ¶ 172. The centerpiece of the State's case was a black men's Lorus brand wristwatch found near Cheek's body, which Defendants claimed belonged to Plaintiff.

LOEVY & LOEVY
Attorneys at Law

Plaintiff alleges that Defendants suppressed exculpatory physical, eyewitness, and documentary evidence they gathered during the Cheek murder investigation, which exonerated Plaintiff and implicated Harris Sr. and his family members in the crime. *Id.* at ¶¶ 92, 155-170. Defendants did not provide that exculpatory evidence to Plaintiff, his attorneys, or to state prosecutors. Among other things, Plaintiff alleges that Defendants suppressed evidence that: Harris Sr. was threatening and abusive toward Cheek *id.* at ¶ 10; Harris Sr. and Cheek had been arguing over the fact that Harris Jr. tried to molest Cheek's daughter shortly before Cheek's murder, *id.*; witness statements confirming that the Lorus wristwatch was not Plaintiff's, *id.* at ¶ 140; police interviews with Googie Harris Sr., Googie Harris Jr., and Joaquin Leal, *id.* at ¶¶ 156-57; the presence of Leal's DNA on Cheek's clothing, *id.* at ¶¶ 159-162; and the presence of Harris Jr.'s DNA on the Lorus watch, *id.*

From the moment Defendants first approached him about Cheek's killing and continuing through next two decades, Plaintiff steadfastly maintained that he knew nothing about Cheek's disappearance and was completely innocent of the crime. *See, e.g., id.* at ¶¶ 94-130. And Defendants' investigation uncovered no credible evidence implicating Plaintiff in the murder. *Id.* at ¶¶ 131-154. Nonetheless, based on the Lorus watch found at the crime scene, statements from Googie Harris Sr., and other evidence that Plaintiff alleges was manufactured, Defendants caused Plaintiff to be charged, prosecuted, and convicted of the Cheek murder. *Id.* at ¶¶ 172, 175. That prosecution was conducted by the DA over three criminal trials in 1999, ending in two hung juries and finally a conviction of Plaintiff. The prosecution was based entirely on the evidence created by Defendants, and it took place without any of the exculpatory evidence suppressed by Defendants. *Id.* at ¶¶ 171-76. At trial, Googie Harris Sr.—one of the real killers—testified against Plaintiff. *Id.* at ¶ 168. Following his wrongful conviction, Plaintiff was sentenced to 15 years to life in prison. *Id*. at ¶ 173.

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**          5:19-cv-01877-JGB-SHK

LOEVY & LOEVY
Attorneys at Law

Years after his conviction, Plaintiff was granted permission to conduct his own testing of DNA evidence Defendants collected from the crime scene, including the Lorus watch. *Id*. at ¶ 187. Those tests revealed that Harris Jr.'s and Leal's DNA was on Cheek's body, her clothing, and the Lorus wristwatch. *Id.* at ¶¶ 192-94. As a result, in October 2018, Plaintiff's criminal conviction was vacated and the charges against him were dropped. *Id.* at ¶ 195. The State of California declared Plaintiff factually innocent the following month. *Id.* at ¶ 196. Immediately thereafter, the DA arrested and charged Harris Sr. and Leal with Cheek's murder. On February 13, 2020, Harris Jr. was charged as well. 2d Am. Compl, *People v. Leal*, No. RIF 1804461 (Sup. Ct. Cal.). All three are currently awaiting trial. Dkt. 144 at 8.[1]

## II.    Relevant Procedural History

Plaintiff filed this suit on October 1, 2019, Dkt. 1, and he later amended his complaint, Dkt. 67. Following this court's order granting in part certain defendants' motion to dismiss, Plaintiff filed a second amended complaint. Dkt. 114. Defendants County of San Bernardino and Gary Penrod moved to dismiss again, and that motion was substantially denied. Dkt. 143 at 7. In particular, Plaintiff's five causes of action against the individual defendants under federal law for violation of his constitutional rights—including his claim that Defendants caused his wrongful conviction by suppressing exculpatory evidence—were sustained by the Court. *Id.*

The County of Riverside Defendants also filed a motion asking the Court to stay Plaintiff's civil case while the criminal proceedings against the Harrises and Leal are pending. Dkt. 50. The motion to stay was supported by an affidavit from Assistant District Attorney Kelli Catlett, who has also submitted an affidavit in support of the DA's present motion to quash. Dkt. 50-1; Dkt. 144 at 60. With the DA's support, Defendants argued that proceeding with this civil suit would interfere with the

_____

[1] Page citations refer to the docket number associated with the DA's submission (*i.e.* Page X of 73).

**Response in Opposition to Motion for an Order to Quash Subpoena**                    5:19-cv-01877-JGB-SHK
**Pursuant to F.R.C.P. Rule 45**

1    prosecution of the Harrises and Leal and expressed concern about the confidentiality

2    of information in the possession of the DA. Dkt. 50. This Court denied the motion to

3    stay, observing:

4
> Even in the usual case, a prolonged stay can result in faded memories,
5    deceased witnesses, and lost documents. But when a case concerns
     decades-old events, further delay poses a dramatically heightened risk
6    that witnesses will forget important details, lose or abandon critical
     evidence, and pass away from age or other circumstances. This
7    increased risk of spoliation is even more pronounced here because, as
     Moving Defendants concede, a final judgment in the Criminal Case
8    could be years away. . . . A prolonged stay could make it difficult for
     Plaintiff to locate and identify the unnamed Defendants prior to the
9    expiration of the statutes of limitations. Thus, a stay would
     substantially increase the risk of further spoliation of important
10   evidence and potentially prevent Plaintiff from prosecuting his claims
     against allegedly responsible individuals.

11

12

13   Dkt. 83 at 4-5. The Court further observed that a stay would be particularly unfair to

14   Plaintiff in light of his age, the "already-existing delay for plaintiffs to obtain a final

15   resolution in civil cases within the Central District," and the "unique circumstances"

16   of this case. *Id.* (citations omitted). As to that last consideration, the Court emphasized

17   that it is "undisputed that Plaintiff was wrongfully convicted and imprisoned for

18   decades for a murder he did not commit." The Court concluded that regardless of who

19   was responsible "for Plaintiff's years-long nightmare,"

20
> Plaintiff is undeniably faultless. It would be perverse to shift the burdens
21   posed by the current situation onto Plaintiff when the very need for a stay
     stems from his being wronged. It would hardly be in the "interests of
22   justice" to delay Plaintiff adjudication of his claims in deference to a
     criminal prosecution that is ongoing only because the County first
23   wrongfully imprisoned Plaintiff.

24   *Id.* at 6 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.

25   1995)). In addition, the Court rejected Defendants' argument that confidentiality

26   concerns counseled in favor of a stay. The Court found "no evidence" that inadvertent

27

28

**Response in Opposition to Motion for an Order to Quash Subpoena**            5:19-cv-01877-JGB-SHK
**Pursuant to F.R.C.P. Rule 45**

LOEVY & LOEVY
Attorneys at Law

disclosure of the DA's records was "likely to occur," and observed: "the parties have already taken steps to shield sensitive information from the public" in light of the protective order entered by Judge Kewalramani. The Court was "thus confident that sufficient safeguards exist to shield sensitive information from the 1998 investigation from being disclosed to defendants in the Criminal Case." Dkt. 83 at 7-8.

### III. Defendants Have Preserved Almost No Record of Their Investigation

After rulings on Defendants' motions to dismiss and motion to stay, the parties commenced discovery, and they exchanged disclosures, interrogatories, and document requests. On June 5, 2020, Plaintiff made his Rule 26(a)(1) disclosures and produced more than 4,000 pages of documents obtained from various sources during his post-conviction proceedings. Plaintiff has continued to produce documents on a rolling basis as he has received additional relevant material.

By contrast, Defendants have produced limited documents and have taken the position that they have nearly nothing remaining of their records relevant to the case. Before their Rule 26(a)(1) disclosures, the Riverside Defendants told Plaintiff they had no documents relevant to the case. On May 26, Riverside defense counsel informed Plaintiff that "some hardcopy reports pertaining to the RSD underlying investigation were unexpectedly located in RSD's old record storage." *See* 5/26/2020 Sain email, attached as **Exhibit 1**. On June 5, the Riverside Defendants served Rule 26(a)(1) disclosures, but they did not produce the documents they identified in their disclosures—the records found in storage—and refused to do so until thirty days after receiving a Rule 34 request for production, at which point they produced 80 documents. Counsel later confirmed that the Riverside County defendants have no documents related to their investigation of the Cheek homicide or Horace Roberts' prosecution, other than those 80 documents. *See* 09/03/2020 Sain email, attached as **Exhibit 2** ("As Riverside advised at the Rule 26F meeting, we have no incident

LOEVY & LOEVY
Attorneys at Law

records: other than what was unexpectedly discovered in old storage and produced with recent discovery."). On September 30, 2020, counsel for the San Bernardino County Defendants responded to Plaintiff's document requests, producing a handful of additional documents.

In the undersigned counsel's experience, is exceedingly rare—if not unprecedented—in wrongful conviction litigation that the police agencies responsible for the underlying investigation leading to the wrongful conviction have lost nearly all of their documents relating to that investigation. While Defendants' inability to locate documents may become the subject to motion practice, Plaintiff takes Defendants at their word that they have produced the relevant documents in their possession. For purposes of the present discovery dispute, the fact of the matter is that the Defendants in this case do not possess the extreme majority of police reports, communications, and other evidence that were developed during the investigation of the Cheek murder and the wrongful prosecution of Plaintiff. The only entity apparently in possession of such documents is the Riverside DA's Office.

## IV.    Plaintiff Seeks Centrally Relevant Documents from the DA

In addition to seeking documents from the Defendants, Plaintiff has subpoenaed the Riverside DA for documents in its possession that are centrally relevant to Plaintiff's claims. Dkt. 144, Ex. 1. Among other documents, Plaintiff's subpoena to the DA seeks investigative reports, communications, and physical evidence received from Riverside and San Bernardino during the investigation or prosecution of the Cheek murder, and similar items pertaining to the current prosecution of the Harrises and Leal. *Id.* Plaintiff is seeking these documents because they are centrally relevant to his claims in this civil suit.

In particular, Plaintiff contends in this suit that Defendants suppressed exculpatory information, which requires him to "show that police officers acted with

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**                    5:19-cv-01877-JGB-SHK

LOEVY & LOEVY
Attorneys at Law

deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1088-89 (9th Cir. 2009). In order to prove that Defendants withheld evidence from prosecutors, Plaintiff must fundamentally be able to show what evidence from Defendants investigation is in the DA's files, and he must be able to compare the evidence that Defendants gave to prosecutors to that evidence that Defendants did not provide. Not only will this evidence permit Plaintiff to show that Defendants in fact suppressed evidence, in violation of due process, it will permit him to show that they did so with deliberate indifference to his rights or for the truth. Plaintiff alleges that Defendants provided false information to prosecutors to secure Plaintiff's wrongful conviction, and in this way as well the DA's files are relevant— they will show whether the alleged false evidence created by Defendants was provided to the DA. If it was, then the DA's files will show not only that Defendants suppressed evidence, but that they did so with the requisite mental state to be held liable under section 1983.

In addition, the DA's files are independently of paramount importance to Plaintiff's proof of his own innocence. A suppression claim requires proof that the evidence suppressed by Defendants was material to the criminal case against Plaintiff—in other words, that Defendants' suppressed evidence, had it been disclosed, would have put "the whole case in such a different light as to undermine confidence in the verdict." *Mellen v. Winn*, 900 F.3d 1085, 1096-97 (9th Cir. 2018). Evidence in the DA's possession establishing that Plaintiff is, in fact, innocent of the Cheek murder is extraordinarily probative of the question whether evidence suppressed by Defendants was material to the criminal case. In addition, Plaintiff's innocence is relevant to Plaintiff's damages in this case, for a criminal defendant who is convicted in violation of the constitution suffers greater harm if that defendant is

1    innocent than if he is guilty. *Parish v. City of Elkhart*, 702 F.3d 997, 1003 (7th Cir.

2    2012). For this reason as well, evidence in the DA's possession establishing that

3    Googie Harris, Sr., Googie Harris, Jr., and Leal—the three defendants currently being

4    prosecuted by the DA—are Cheek's real killers is critical to Plaintiff's contention in

5    this civil suit that he is innocent. It is hard to imagine a repository of files, other than

6    those in possession of the parties, more essential to litigating this civil case than those

7    files in the DA's possession.

8    **V.     Plaintiff's Effort to Narrow the Subpoena and Reach Agreement with
        the Riverside District Attorney**

9        Plaintiff served his subpoena on July 30, 2020, with a return date of August 20,

10   2020. Dkt. 144, Ex. 1. In an effort to avoid litigation over the subpoena, Plaintiff

11   granted the DA multiple extensions of time to respond to the subpoena, he

12   substantially narrowed the scope of his subpoena, he proposed protective orders to

13   alleviate concerns about confidentiality and the DA's ongoing prosecution, he offered

14   to hire a third-party vendor to assist with scanning the DA's documents, he discussed

15   this Court's refusal to stay the civil case in light of criminal proceedings, including

16   providing the Court's orders on that point, and he discussed the relevance of the

17   documents and the need for their production at length. Dkt. 144, Ex. 2; Dkt. 144, Ex.

18   3 (September 1, 10, and 11 emails from Plaintiff's counsel).

19       Specifically, as Plaintiff and the DA negotiated, Plaitniff extended the deadline

20   for the DA to respond to the subpoena from August 20 to September 3, 2020, and then

21   from September 3 to September 10, 2020, and then an additional day, to September

22   11, 2020. *Id.* In addition, while all of the documents outlined in the rider to Plaintiff's

23   subpoena were relevant for the reasons already described, after negotiation with the

24   DA, Plaintiff agreed to limit his subpoena dramatically, removing his requests for

25   pleadings, motions, discovery requests, documents tendered in discovery, discovery

26   receipts, subpoenas, court orders, general correspondence, transcripts of court

27

28

**Response in Opposition to Motion for an Order to Quash Subpoena**          5:19-cv-01877-JGB-SHK
**Pursuant to F.R.C.P. Rule 45**

LOEVY & LOEVY
Attorneys at Law

proceedings (including pretrial, grand jury, trial, and post-conviction proceedings), and exhibits admitted into evidence in the criminal proceedings against Plaintiff. *Compare* Dkt. 144, Ex. 1 (Plaintiff's Subpoena Rider), Requests 1(a)-(p), *with* Dkt. 144 Ex. 2 (Plaintiff's August 25 Correspondence) (removing Requests 1(a), 1(j), and 1(k) from the rider). With respect to Plaintiff's requests for evidence implicating the Harrises and Leal, Plaintiff narrowed his requests even more substantially. *Compare* Exhibit Dkt. 144, Ex. 1 (Plaintiff's Subpoena Rider), Requests 2(a)-(p), *with* Dkt. 144, Ex. 2 (Plaintiff's August 25 Correspondence) (removing Requests 2(a), 2(c), 2(e), 2(f), 2(j), 2(k), 2(l), 2(m), and 2(n). At the end of the narrowing process, Plaintiff's subpoena requested the following documents:

> 1. Any and all records, files, and documents relating to the investigation, criminal prosecution, trial, appeals, and post-conviction investigation and proceedings in the case of People v. Horace Roberts, Superior Court in the State of California, County of Riverside, Court Case No. RIF 080455, including but not limited to:
>> **b) Police reports or other investigative documents, including notes, provided to you by the Riverside County Sheriff's Department or any of its employees or agents;**
>> **d) Police reports or other investigative documents, including notes, provided to you by the San Bernardino Sheriff's Department or any of its employees or agents;**
>> **f) Photographs (including but not limited to line-up photos, photo arrays and crime scene photos);**
>> g) Any statements of any defendant, suspect, or and witness whether oral, handwritten, court reported, or audio and/or video recorded;
>> h) Any requests or protocols for the testing and/or analysis of DNA, fingerprints, blood and other bodily fluids, and any other materials or physical evidence, and any laboratory reports and test results relating to such testing and/or analysis;
>> **i) All investigative reports and notes;**
>> l) All communications with any attorney representing Horace Roberts;
>> m) All communications with any attorney representing any other witness;
>> n) All documents relating to the murder of Terry Cheek, including but not limited to physical evidence collected during the course of the

LOEVY & LOEVY
Attorneys at Law

investigation of same or used at trial;

o) Any and all communications with any employee or agent of the County of Riverside, including but not limited to police officers, attorneys, and investigators, regarding Horace Roberts;

p) Any and all communications with any employee or agent of the County of San Bernardino, including but not limited to police officers, attorneys, and investigators, regarding Horace Roberts.

2. Any and all records, files, and documents relating to the investigation, criminal prosecution, trial, and appeals in the case of People v. Joaquin Leal, et al., Superior Court in the State of California, County of Riverside, Court Case No. RIF 1804461, including but not limited to:

b) Police reports or other investigative documents, including notes, provided to you by the Riverside County Sheriff's Department or any of its employees or agents;

d) Police reports or other investigative documents, including notes, provided to you by the San Bernardino Sheriff's Department or any of its employees or agents;

g) Any statements of any defendant, suspect, or and witness whether oral, handwritten, court reported, or audio and/or video recorded;

h) Any requests or protocols for the testing and/or analysis of DNA, fingerprints, blood and other bodily fluids, and any other materials or physical evidence, and any laboratory reports and test results relating to such testing and/or analysis;

i) All investigative reports and notes;

o) Any and all communications with any employee or agent of the County of Riverside, including but not limited to police officers, attorneys, and investigators, regarding Joaquin Leal, Googie Harris Sr., and Googie Harris Jr.;

p) Any and all communications with any employee or agent of the County of San Bernardino, including but not limited to police officers, attorneys, and investigators, regarding Joaquin Leal, Googie Harris Sr., and Googie Harris Jr.

In addition, stressing that the Court already had in place a protective order that would protect the documents in the possession of third parties, Plaintiff committed to the DA that he was willing to enter any protective order that would alleviate the DA's concerns about confidentiality of the pending criminal proceedings. Plaintiff and the

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**                    5:19-cv-01877-JGB-SHK

LOEVY & LOEVY
Attorneys at Law

DA agreed to an attorneys'-eyes-only protective order and a stipulation, Dkt. 144, Ex. 2 (August 25 Correspondence from Plaintiff's counsel); Dkt. 144, Ex. 3 (September 1, 10, and 11 emails from Plaintiff's counsel); Dkt. 147 at 2 (setting out stipulation that the protective order is to "address [the DA's] concens about its ongoing prosecution of those currently facing charges for the murder of Terry Cheek"), which has now been entered by the Court, Dkt. 150.

With a second, attorneys'-eyes-only order in place, the DA agreed to produce all police reports and other investigative documents in its possession relating to the Cheek homicide that were created before the date on which Plaintiff was exonerated. Dkt 144, Ex. 3 (September emails from Plaintiff's counsel confirming agreement). Accordingly, that agreement further narrowed the documents in dispute, the DA having agreed to provide documents responsive to paragraphs 1(b), 1(d), 1(f), and 1(i) of Plaintiff's subpoena rider. *Id.* The documents the DA agreed to produce pursuant to the second protective order are set out in bold above, while those that the DA refuses to produce are set out above in plain text.

On September 11, 2020, the DA filed a motion to quash. Dkt. 144. Defendants have filed notices that they apparently have no objection to the motion to quash, incorporating their prior briefing asking the Court to stay the civil case. Dkts. 145 & 146. This Court has already rejected the arguments that Defendants incorporate by reference, Dkt. 83, and so Plaintiff does not address them again here. Suffice it to say those arguments are not reasons to grant a motion to quash. It is notable, however, that Defendants, who themselves have apparently lost their documents relating to the investigation at issue in this case, wish to avoid discovery of documents relevant to Plaintiff's claims in the DA's possession.

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**                    5:19-cv-01877-JGB-SHK

LOEVY & LOEVY
Attorneys at Law

**ARGUMENT**

### I.    Legal Standard

"Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. . . .  Rule 45 provides that a court may quash or modify a subpoena if it 'subjects a person to undue burden.' When determining the propriety of a subpoena, the court balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *In re Third Party Subpoena of Am. Suzuki Motor Corp.*, No. SACV1201571CJCMLGX, 2012 WL 12903125, at *2 (C.D. Cal. Oct. 17, 2012) (quoting Fed. R. Civ. P 45(3)(A); citing *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)) (footnote omitted). Accordingly, this Court has denied a motion to quash and required a third-party to comply with a subpoena upon a finding that the documents requested are relevant to the issues presented in the dispute and that producing documents within the party's control is not unduly burdensome. *See, e.g., id*. at *2-3 (denying third-party's motion to quash subpoena seeking evidence that was "essential" to the plaintiff's claim and "likely in the exclusive possession" of the third-party; and overruling third-party's confidentiality-based objection in view of protective order).

### II.    The Subpoena Seeks Critical, Relevant Information

Plaintiff's subpoena seeks documents plainly relevant to this case. As narrowed, the subpoena seeks documents that are absolutely critical proof that Plaintiff must have before summary judgment and trial. Setting to one side the investigative records predating Plaintiff's exoneration, which the DA has agreed to produce already, Plaintiff's narrowed subpoena seeks witness statements, physical evidence and related documents, and communications with attorneys in the criminal case and with Riverside and San Bernardino employees that were obtained by the DA during the prosecution of Plaintiff. Dkt. 144, Ex. 1 (Plaintiff's Subpoena Rider),

**Response in Opposition to Motion for an Order to Quash Subpoena
Pursuant to F.R.C.P. Rule 45**                                      5:19-cv-01877-JGB-SHK

Requests 1(g)-(h), 1(l)-(p). In addition, it seeks investigative documents, witness statements, physical evidence and related documents, and communications with Riverside and San Bernardino employees about the prosecution of the Harrises and Leal. *Id.*, Requests 2(b), 2(d), 2(g)-(i), and 2(o)-(p).

As discussed, access to these documents in the DA's files is essential to nearly every element of Plaintiff's due process claims: to prove that Defendants withheld evidence from prosecutors, *Tennison*, 570 F.3d at 1088-89; to show they did so with indifference to Plaintiff's rights or indifference for the truth, *id.*; and to prove that Plaintiff is actually innocent of the Cheek murder, which is important to showing that the evidence Defendants suppressed and fabricated was material to Plaintiff's criminal case, *Mellen*, 900 F.3d at 1096-97, and to establishing Plaintiff's damages resulting from the due process violation, *Parish*, 702 F.3d at 1003.

Given that they are central to Plaintiff's claims, without discovery of the DA's files, Plaintiff will be substantially hampered from pursuing his due process claims and from establishing his innocence in this case. Granting the DA's motion to quash in this context would be tantamount to directing a decision on the merits of Plaintiff's claims. This is the reason that discovery of prosecutors' files is routine in civil wrongful conviction cases, even when the real perpetrators are subject to a continued criminal prosecution.

Finally, the importance of the DA's relevant documents to this particular civil case is especially pronounced, given that Defendants have asserted that they have lost most of their records of their own investigation of the Cheek homicide. In wrongful conviction cases, the police files and communications among police defendants and other law enforcement agencies form the backbone of documents produced in support of claims and defenses in the case. That Defendants here cannot produce and have not accounted for their documents in the underlying criminal investigation leaves the DA

as the only source Plaintiff can turn to for document discovery in this civil case. There is no question the DA's documents are essential to this case and it would be extraordinarily difficult to identify any equities on the other side that justify granting the DA's motion to quash.

### III.    The Subpoena Does Not Impose an Undue Burden

None of the DA's arguments to quash the subpoena come close. In fact, they all lack merit. The DA asks the Court to quash the subpoena because, it says, compliance would impose an undue burden. Dkt. 144 at 9-13. The DA prefaces this argument with a lengthy discussion of the legal standard and Plaintiff's counsel's willingness "to narrow the scope of the Subpoena to eliminate" numerous categories of documents. *Id.* at 9-12. The DA then arrives at the non sequitur that the subpoena is "unduly burdensome." *Id.* at 12. Rather than explain why or how compliance would be burdensome, the DA simply reiterates its belief that "the Subpoena should be limited to records as dated up to the conviction in the *People v. Horace Roberts* case." *Id.*; *id.* at 13 (repeating argument that records sought by subpoena are "not relevant to the current civil action" and failing to elaborate on burden). Putting to one side that the DA has already agreed to produce investigative documents *through the date of Plaintiff's exoneration*, the DA's argument about burden lacks merit.

As described in detail already, the subpoena seeks centrally relevant documents that are likely available only from the DA. The DA's assessment that this evidence is irrelevant is simply incorrect, and its argument therefore does not provide a legal basis for avoiding compliance with the subpoena. Once the relevance of the documents is established, the DA's burden argument falls flat. The burden imposed on the DA by the subpoena is proportionate to the needs of the case because the evidence is highly relevant and the DA has failed to articulate any real burden it faces.

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**                    5:19-cv-01877-JGB-SHK

Indeed, it makes sense that the DA would not face a significant burden in producing responsive files. Presumably, its file related to the prosecution of Horace Roberts is stored in a single location; and its file related to the Harrises and Leal's joint prosecution surely must be stored in a single location. It is difficult to imagine what burden would be created by producing the two files and conducting electronic searches for communications and electronically stored information. Indeed, to the extent there is a cost of scanning the files, Plaintiff has already offered to bear that cost to expedite the production of the DA's documents.

Against this backdrop, the DA has presented no support for the claim that the narrowed subpoena seeking crucial information imposes a significant burden, let alone a burden that is disproportionate to the needs of the case. *See, e.g., Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05CV01411 OWW GSA, 2009 WL 3381055, at *4 (E.D. Cal. Oct. 15, 2009) (rejecting argument that third-party subpoenas were unduly burdensome.

## IV.    The Protective Orders Are Sufficient to Safeguard the Documents, As the DA Has Conceded

As this Court noted in denying the Riverside Defendants' motion to stay, the agreed protective order in this case, Dkt. 32, is sufficient to safeguard the secrecy of any nonpublic information the DA produces in this case. Dkt. 83 at 7-8 (order denying motion to stay). What is more, since that ruling, Plaintiff agreed to add another layer of protection at the DA's request: Plaintiff and the DA entered the Second Protective Order Regarding Confidential District Attorney Documents. Dkt. 150. The Second Protective Order authorizes the DA to designate "information or items the disclosure of which would jeopardize a pending criminal prosecution" as "attorneys' eyes only." *Id.* at ¶ 3. Pursuant to the order, a party receiving material so designated may disclose that material only to the party's counsel and employees of counsel's firm, as necessary. *Id*. at ¶ 4.2. In the stipulation accompanying the second protective order,

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**                    5:19-cv-01877-JGB-SHK

1  which the DA's counsel signed, the parties made clear that it was sufficient to

2  alleviate the DA's concerns about confidentiality. Dkt. 147.

3       With these protections in place, the risk that material produced by the DA will

4  be viewed by anyone other than the parties and attorneys in this case is vanishingly

5  small. And the DA recognizes as much, as it has agreed to produce police and

6  investigative documents originating from before Plaintiff's conviction became final

7  on direct appeal. Viewed in this context, DDA Catlett's speculation that materials

8  might be leaked deserves little weight relative to the importance of the information to

9  Plaintiff's case. *See* Dkt. 144, Catlett Decl. ¶ 5 ("A protective order is insufficient to

10  protect the government's interests for any records requested in the Subpoena for

11  which the RCDAO is seeking to quash.").

12       In addition, though DDA Catlett raises the specter that "Valid protective orders

13  may be inadvertently violated such that the information sought to be protected is

14  leaked to unintended individuals, which in turn can jeopardize the current

15  prosecution," the DA has failed to articulate any particular reasons that a protective

16  order might be violated in this case. Nor has the DA cited any legal authority for the

17  proposition that a federal protective order is insufficient to address confidentiality

18  concerns. In reality, federal protective orders are used on a daily basis in federal

19  courts to protect information far more sensitive than that at issue here. *See, e.g, Brown*

20  *Bag Software v. Symantec Corp*., 960 F.2d 1465 (9th Cir. 1992) (upholding use of

21  protective order that shielded plaintiff's in-house counsel from personal knowledge of

22  defendant's trade secrets, but allowed access to information through independent

23  consultant); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 556 (C.D.

24  Cal. 2007) (ordering entry of protective order providing that "the disclosure of

25  Defendant's customer and supplier lists as well as the revenue and sales information,

26  as connected to specific customers and suppliers, be limited to 'attorney's eyes

27

28

LOEVY & LOEVY
Attorneys at Law

**Response in Opposition to Motion for an Order to Quash Subpoena**
**Pursuant to F.R.C.P. Rule 45**                                         5:19-cv-01877-JGB-SHK

only.'"").The protective orders in place in this case alleviate any concern about confidentiality and interference in the criminal case. This Court should reject the DA's speculative argument to the contrary.

## V.    The DA Has Not Properly Invoked Privilege

Finally, the DA's arguments that it should not have to respond to the subpoena because it possesses privileged documents also lacks merit. For starters, the DA's conclusory assertion of privilege does not satisfy the threshold showing that a party must make in order to establish that a privilege applies. Even if the DA had satisfied that requirement, there is no justification for treating as privileged those documents that Plaintiff seeks via his narrowed subpoena.

"Federal common law recognizes a qualified privilege for official information. In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (citing *Kerr v. U.S. Dist. Ct. for the Northern Dist.,* 511 F.2d 192, 198 (9th Cir. 1975)) (other citations omitted). "The party opposing discovery has the burden of showing why discovery should be denied, and the balancing of the potential benefits of disclosure against the potential disadvantage is pre-weighted in favor of disclosure because privileges operate in derogation of the truth-finding process, and because such a pre-weighting is consistent with the idea that privileges are to be narrowly construed, and any doubts about their applicability are to be resolved in favor of disclosure. *Chism v. Cty. of San Bernardino*, 159 F.R.D. 531, 533 (C.D. Cal. 1994) (citations omitted).

Before courts undertake the balancing of interests, the party asserting the privilege "must properly invoke the privilege by making a substantial threshold showing." *Soto*, 162 F.R.D. at 613 (citation and internal quotation marks omitted). To

LOEVY & LOEVY
Attorneys at Law

- 20 -

**Response in Opposition to Motion for an Order to Quash Subpoena**                5:19-cv-01877-JGB-SHK
**Pursuant to F.R.C.P. Rule 45**

fulfill that requirement, the DA was required to submit a declaration or affidavit that includes the following information:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 670 (N.D. Cal. 1987); *Soto*, 162 F.R.D. at 613 (discussing *Kelly* requirements); *Chism v. County of San Bernardino,* 159 F.R.D. 531, 533 (C.D. Cal. 1994) (same); *Hampton v. City of San Diego,* 147 F.R.D. 227, 230–31 (S.D. Cal. 1993) (same); *Miller v. Pancucci,* 141 F.R.D. 292, 301 (C.D. Cal. 1992) (same). DDA Catlett's declaration falls far short of *Kelly's* requirement. DDA Catlett declares:

> The RCDAO invokes the official information/law enforcement investigatory privileges in asserting that the subpoenaed records are not subject to production. There is a pending criminal proceeding as related to the 1998 homicide of Terry Cheek. Although Horace Roberts was exonerated, the records from *People v. Joaquin Leal, et al.*, all of which collectively the RCDAO asserts are protected as official information to ensure that the current prosecution is not jeopardized by any leak of information to the public and to prevent any interference with any related investigation and prosecution, as well as to protect witnesses and the confidentiality of sources.

Dkt. 144, Catlett Decl. ¶ 4. The declaration's rote invocation of privilege does not suffice. DDA Catlett does not state that she personally reviewed the material in

LOEVY & LOEVY
Attorneys at Law

question; does not specifically identify the governmental or privacy issue at stake; does not describe how disclosure subject to the protective orders would create a substantial risk of harm; and does not project how much harm would be done. Nor does the declaration describe how Plaintiff could acquire information of equivalent value, likely because the DA recognizes it is the only source of the information Plaintiff needs for his due process claims. As such, the DA has not met the threshold requirement to invoke the official information privilege. *See, e.g., Soto*, 614 (rejecting invocation of privilege finding declarant's "general assertion" of harm to police department from production of documents insufficient). *See also Chism,* 159 F.R.D. at 534–35 ("a general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure"). For that reason alone, the DA's assertion of privilege can be rejected.

In *Chism*, for example, the district court concluded that the defendants had failed to properly invoke the official information privilege, even where the invocation was supported by declaration that specifically identified the five documents at issue by description and date and addressed each of the five *Kelly* requirements in general terms. Still, the Central District held that the declaration was insufficient. Among other infirmities, the *Chism* court noted that the "four basic reasons for assertion of the official information privilege" articulated in the declaration "are simply not specific enough to allow for a true weighing of the County's interest in keeping the documents private against the plaintiffs' interest in disclosure of the documents' contents." *Chism*, 159 F.R.D. at 534. The Catlett declaration is far less specific than the Roper declaration that was rejected in *Chism*.

The DA has thus failed to meet the threshold requirement for the Court to balance the parties' relative interests. But even if the Court were to conduct a balancing test, the DA's privilege argument would fail. The DA claims that "Roberts'

**Response in Opposition to Motion for an Order to Quash Subpoena**          5:19-cv-01877-JGB-SHK
**Pursuant to F.R.C.P. Rule 45**

LOEVY & LOEVY
Attorneys at Law

LOEVY & LOEVY
Attorneys at Law

need for the records should not be deemed urgent by this Court" because he has "been exonerated and now seeks the records for a federal civil rights case." Dkt. 144 at 13. As this Court recognized in denying the Riverside Defendants' motion to stay, Plaintiff's exoneration after decades in prison for a crime of which he was wholly innocent underscores rather than undermines the sense of urgency here. Having already lost 20 years of his life, Plaintiff should not be forced to endure additional delay as a result of speculative confidentiality concerns imagined by the office that prosecuted him based on fabricated evidence. The DA's reference to the "lack of urgency for immediate production to Roberts for his federal civil case" callously ignores the reality of what is at stake for Mr. Roberts, who is almost 63 years old and struggling to rebuild the life that was stolen from him. Balancing Plaintiff's need for information that is essential to proving his case against the illusory risk that confidential documents might be inadvertently disclosed despite two protective orders, the DA's motion to quash should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the DA's motion to quash and order the DA to produce the following documents, as set out in Plaintiff's rider to the subpoena:[2]

1. Any and all records, files, and documents relating to the investigation, criminal prosecution, trial, appeals, and post-conviction investigation and proceedings in the case of People v. Horace Roberts, Superior Court in the State of California, County of Riverside, Court Case No. RIF 080455, including but not limited to:

**b) Police reports or other investigative documents, including notes, provided to you by the Riverside County Sheriff's Department or any of its employees or agents;**

---

[2] The following requests represent Plaintiff's subpoena as narrowed through negotiation with the DA. Those items in bold represent categories of information that the DA has agreed to produce already. Plaintiff requests that all items be included in the Court's order for clarity's sake.

**d) Police reports or other investigative documents, including notes, provided to you by the San Bernardino Sheriff's Department or any of its employees or agents;**

**f) Photographs (including but not limited to line-up photos, photo arrays and crime scene photos);**

g) Any statements of any defendant, suspect, or and witness whether oral, handwritten, court reported, or audio and/or video recorded;

h) Any requests or protocols for the testing and/or analysis of DNA, fingerprints, blood and other bodily fluids, and any other materials or physical evidence, and any laboratory reports and test results relating to such testing and/or analysis;

**i) All investigative reports and notes;**

l) All communications with any attorney representing Horace Roberts;

m) All communications with any attorney representing any other witness;

n) All documents relating to the murder of Terry Cheek, including but not limited to physical evidence collected during the course of the investigation of same or used at trial;

o) Any and all communications with any employee or agent of the County of Riverside, including but not limited to police officers, attorneys, and investigators, regarding Horace Roberts;

p) Any and all communications with any employee or agent of the County of San Bernardino, including but not limited to police officers, attorneys, and investigators, regarding Horace Roberts.

2. Any and all records, files, and documents relating to the investigation, criminal prosecution, trial, and appeals in the case of People v. Joaquin Leal, et al., Superior Court in the State of California, County of Riverside, Court Case No. RIF 1804461, including but not limited to:

b) Police reports or other investigative documents, including notes, provided to you by the Riverside County Sheriff's Department or any of its employees or agents;

d) Police reports or other investigative documents, including notes, provided to you by the San Bernardino Sheriff's Department or any of its employees or agents;

g) Any statements of any defendant, suspect, or and witness whether oral, handwritten, court reported, or audio and/or video recorded;

h) Any requests or protocols for the testing and/or analysis of DNA, fingerprints, blood and other bodily fluids, and any other materials or physical evidence, and any laboratory reports and test results relating to such testing and/or analysis;

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**          5:19-cv-01877-JGB-SHK

LOEVY & LOEVY
Attorneys at Law

i) All investigative reports and notes;

o) Any and all communications with any employee or agent of the County of Riverside, including but not limited to police officers, attorneys, and investigators, regarding Joaquin Leal, Googie Harris Sr., and Googie Harris Jr.;

p) Any and all communications with any employee or agent of the County of San Bernardino, including but not limited to police officers, attorneys, and investigators, regarding Joaquin Leal, Googie Harris Sr., and Googie Harris Jr.

Dated: October 20, 2020

Respectfully submitted,

Loevy & Loevy

_s/_ Alison Leff

Attorney for Plaintiff Horace Roberts

LOEVY & LOEVY
Attorneys at Law

- 25 -

**Response in Opposition to Motion for an Order to Quash Subpoena Pursuant to F.R.C.P. Rule 45**

5:19-cv-01877-JGB-SHK